# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| HOPE FORD, | ) |
| | ) |
| Intervenor Plaintiff, | ) |
| | ) |
| v. | )  CAUSE NO.: 3:08-CV-44-TS |
| | ) |
| J.H. HEIN CORPORATION, d/b/a Maxi's Food and Spirits Barn, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 30], filed by the

Defendant J.H. Hein Corporation, d/b/a Maxi's Food and Spirits Barn, on January 15, 2009, and

on the Defendant's Motion to Strike Affidavit [DE 41], filed on March 4, 2009. Both Motions

have been briefed and are now ripe for ruling.

## BACKGROUND

On January 25, 2008, the Equal Employment Opportunity Commission (EEOC) instituted

this employment discrimination lawsuit by filing a Complaint and Jury Trial Demand [DE 1]. In

this Complaint, the EEOC asserts claims under Title VII of the Civil Rights Act of 1964 and Title

I of the Civil Rights Act of 1991 based upon the Defendant's alleged discrimination on the basis

of sex and pregnancy. The EEOC seeks injunctive relief, compensatory and punitive damages,

and costs. On February 14, the Defendant filed its Answer to Plaintiff's Civil Complaint for

Damages [DE 4]. On February 28, Hope Ford filed a Motion to Intervene [DE 6], to which she attached her Intervenor's Complaint and Jury Demand [DE 6-2], seeking injunctive relief, compensatory and punitive damages, attorney's fees, and costs. On March 17, the Defendant filed its Answer to Intervenor-Plaintiff's Complaint and Jury Demand [DE 9]. On March 19, the Court granted Ford's Motion to Intervene, and her Intervenor Complaint was deemed filed as of March 19. On April 23, the EEOC filed an Amended Complaint [DE 16], changing a date in paragraph 7, but the EEOC failed first to obtain leave pursuant to Federal Rule of Civil Procedure 15(a)(1). Nevertheless, the Defendant never moved to strike the Amended Complaint and never filed an answer or otherwise responded to the Amended Complaint.[1]

On January 15, 2009, the Defendant filed its Motion for Summary Judgment [DE 30], Brief in Support [DE 31], and Designation of Evidence in Support [DE 32]. On February 10, the EEOC filed its Response [DE 34] and Submission of Evidentiary Materials [DE 35]. On February 17, Ford filed her Response [DE 38] and Appendix of Evidence [DE 39]. Ford also manually filed the Affidavit of John D. LaDue  [DE 40] and a recording of the Amanda Harrison voice mail message. The Defendant did not file a reply, but on March 4, the Defendant did file a Motion to Strike Affidavit [of Hope Ford] [DE 41]. On March 19, Ford filed her Response [DE 42] to the Defendant's Motion to Strike.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should

---

[1] On June 10, 2009, the Court conducted a telephonic ruling/status conference with counsel for the parties and identified these procedural deficiencies. The EEOC orally moved for leave to file its Amended Complaint, and the Defendant did not object. The Court granted the EEOC's oral request, and the EEOC's Amended Complaint is deemed filed on April 23, 2008. The Court also granted the Defendant up to and including June 22, 2009, in which to file an Answer to the EEOC's Amended Complaint.

be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609.

The rule governing summary judgment requires that a supporting or opposing affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). On a

motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with Rule 56(e). *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply and should be disregarded: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture. *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted). If it meets these requirements, "a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *see also U.S. Gypsum Co. v. LaFarge N. A., Inc.*, 508 F. Supp. 2d 601, 626 (N.D. Ill. 2007) ("Most affidavits and much testimony are self-serving. Like any other testimony, self-serving testimony is to be accepted on summary judgment as long as it is based on personal knowledge, sufficiently specific, not disputed by contrary evidence of the nonmovant, and in compliance with any other evidentiary criteria applicable to the particular testimony."). Additionally, "summary judgment cannot be used to resolve swearing contests between litigants." *Payne*, 337 F.3d at 770 (citing

cases).

## MOTION TO STRIKE ANALYSIS

The Defendant did not file a "reply" to the Responses to its Motion for Summary

Judgment that were filed by the EEOC and Ford, but the Defendant did file a Motion to Strike

Affidavit on March 4, 2009, seeking to strike the Declaration of Hope Ford.[2] Although the Ford

Declaration was separately submitted by both the EEOC and Ford in support of their Responses,

(*see* DE 35-2 & 39-5), the Defendant's Motion to Strike Affidavit addresses only the submission

of the Ford Declaration in support of the EEOC's Response, although obviously the same grounds

would apply to the EEOC's and Ford's submissions of the Ford Declaration in support of their

respective Responses. The Defendant argues that the Declaration "is riddled with blanket

conclusory statements and statements that are made with absolutely no personal knowledge" and

"is self-serving."[3] (Def.'s Mot. Strike 1–2.) Indeed, the Defendant challenges each of the

following statements for being conclusory, self-serving, and lacking any basis in personal

knowledge:

> Paragraph 5—"I made a better hourly wage and better tips working as a
> bartender/server in the upstairs bar at Maxi's, and made a smaller hourly wage and
> less tips working Thursday evenings in the downstairs restaurant as a server." (DE
> 35-2 & 39-5 at 1–2.)

---

[2] The Defendant filed its Motion to Strike Affidavit more than fifteen days after the EEOC's Response to the Defendant's Motion for Summary Judgment was filed, but fifteen days after Ford filed her Response to the Motion for Summary Judgment. Ford filed her Response to the Defendant's Motion for Summary Judgment more than thirty days following the Defendant's filing of its Motion for Summary Judgment. The Court will overlook these transgressions of Local Rule 56.1 because none of the parties has asked the Court to strike any submissions that were not filed within the applicable deadlines.

[3] The Defendant itself relies heavily upon affidavits of its owners, managers, and employees in supporting its Motion for Summary Judgment. The requirements of Rule 56(e)(1) regarding personal knowledge, admissible facts, and competent testimony apply to both supporting and opposing affidavits.

Paragraph 6—"I always did my best to serve my customers well at Maxi's. My tips, and therefore my livelihood, depended on my giving good service. I also always did the required cleaning and side-work." (DE 35-2 & 39-5 at 2.)

Paragraph 7—"In April or May of 2006, the morning after one of my shifts, Barbara Court, one of Maxi's owners, left a note for me and Katie Van Tornhout (one of Barb's daughter's and another Maxi's server) stating that we had left the bar a mess from the night before. This was the only comment I ever received regarding poor work performance at Maxi's. Other than this comment, no one at Maxi's ever made any comments to me about poor service or poor work performance. Until this lawsuit, the only comments about my work at Maxi's that I heard were positive." (DE 35-2 & 39-5 at 2.)

Paragraph 10—"I always had a good personal appearance when I worked at Maxi's." (DE 35-2 & 39-5 at 2.)

Paragraph 11—"I was only late for work once at Maxi's because I was stuck in traffic. However, on my way to work that day, I called Maxi's to report that I was stuck in traffic and may be late. On that day, I still arrived at Maxi's five minutes before opening." (DE 35-2 & 39-5 at 2.)

Paragraph 12—"On September 21, 2006, the night that I announced my pregnancy, owner Barb Court's daughter Emily Hess called me after work and stated that she was concerned and worried about me because I was going to be losing my job. I responded to her by saying, 'what?' because I did not understand why she would say that to me. Emily replied that she was 'no good at this' and that 'she was going to have Mandy call me back." (DE 35-2 & 39-5 at 3.)

Paragraph 13—"Some time after I spoke to Emily, I retrieved a message from my phone from Amanda Harrison, who was my manager at Maxi's and another daughter of Barb Court. I had not heard my phone ring when Amanda Harrison called. The message from Amanda Harrison said, among other things, that they were not going to 'pull' me 'yet,' but that 'the first time any sign' of my 'pregnancy showed through,' I would be 'done.'" (DE 35-2 & 39-5 at 3.)

Paragraph 16—"After announcing my pregnancy and receiving the phone message from Mandy Harrison, I was told to wear bib overalls (the downstairs restaurant uniform) as I was being moved downstairs." (DE 35-2 & 39-5 at 3.)

Paragraph 18—"During my last two evenings of work at Maxi's, Friday September 29, 2006 and Saturday September 30, 2006, other servers began taking my tables from me, saying that Barb had said that I could not keep up. That was not true." (DE 35-2 & 39-5 at 3.)

As to paragraphs 6, 7, 10, 11, 16, and 18, the Defendant also argues that Ford attempts to speak

for management without personal knowledge and in conclusory and self-serving terms.

In her Response, Ford addresses the Defendant's arguments regarding each of these challenged statements, showing her personal knowledge and competence to testify to the matters. As to paragraph 5, she responds that paragraphs 3 and 4 of the Ford Declaration establish that she worked at the Defendant's bar and restaurant from January or February 2005 to September 30, 2006 and that she worked most evenings as a bartender/server in the upstairs bar and Thursday evenings in the downstairs restaurant. She contends that these averments provide a foundation for her comparative statement regarding the hourly wages and tips she earned in the upstairs bar as opposed to the downstairs restaurant. As to paragraph 6, she responds that she has personal knowledge regarding whether she did her best to serve customers, whether her tips and livelihood depended on giving good service, and whether she completed the required cleaning and side-work. As to paragraphs 7, 10, and 11, she responds that she has personal knowledge regarding the note she received from Barbara Court, comments and/or notes she received regarding her performance, her own physical appearance, and times and circumstances when she was late for work. As to paragraphs 12 and 13, she responds that she has personal knowledge regarding the telephone conversation she had with Emily Hess and the voice mail message Amanda Harrison left for her, and that her statement regarding the message is not inconsistent with evidence in the record. As to paragraph 16, she responds that she has personal knowledge regarding being told to wear bib overalls and that she was being moved downstairs. As to paragraph 18, she responds that she has personal knowledge regarding other servers taking her tables, what servers told her, and whether she could keep up and perform her job adequately.

The Court agrees with Ford that she has personal knowledge of (and is competent to testify regarding) the wages and tips she earned as an employee of the Defendant, her effort in

serving customers, her performance of cleaning and side-work tasks, the note received from Barbara Court, comments and notes she received regarding her performance, her personal appearance, times and circumstances surrounding her reporting for work, calls and voice mail messages she received, instructions received regarding what to wear to work and being moved downstairs, other servers taking her tables, what servers told her, and whether she could keep up and perform her job. Thus, the Court finds that the statements made in paragraphs 5, 6, 7, 10, 11, 12, 13, 16, and 18 of the Ford Declaration are based on personal knowledge and set out facts that would be admissible in evidence and that she is competent to testify on these matters. For these reasons, the Court will deny the Defendant's Motion to Strike Affidavit.

## FACTS

Established by William Harry DeShone in 1990, J.H. Hein Corporation, d/b/a Maxi's Food and Spirits Barn, is currently owned by DeShone and Barbara Court. Each owns fifty percent of the business. Although partially retired, DeShone does participate in managing and operating aspects of the Defendant's business, but Court runs the day-to-day operations, including scheduling and overseeing employees. Amanda Harrison became the floor manager in September 2005, and she schedules employees, oversees the floor functions, and handles customer complaints.

Court hired Ford as a server/bartender in January or February 2005. On September 21, 2006, Ford told Katie Van Tornhout, Harrison, and Emily Hess that she was pregnant. (Van Tornhout, Harrison, and Hess are all daughters of Court and are employed by the Defendant.) Van Tornhout told Ford not to tell Court about her pregnancy at that time and that Van Tornhout and Ford would tell Court together. Harrison and Hess had multiple conversations with Ford

regarding her pregnancy, including various alternatives, childbirth expenses, insurance to cover expenses, and public support available to expecting mothers and infants. On September 21, Hess told Court that Ford was pregnant. Court then asked Ford why she had not informed Court personally about her pregnancy, and Ford expressed that she was concerned Court would be angry. Also on September 21, Hess told Ford over the telephone that she was concerned about Ford losing her job, and Harrison left a voice mail message for Ford mentioning "Harry's rule" and telling Ford that her employment would be ended at the first sign of her pregnancy. On September 23, Court told Ford that she would move her to work downstairs because, in her experience with other pregnant workers, they could not keep up. Around the same time, DeShone came in to work to speak with Ford personally. DeShone spoke with her about her pregnancy and told her to be careful and not to slip and fall. On September 30, 2006, Court terminated Ford's employment.

Additional facts will be presented as relevant to the Court's analysis.

## MOTION FOR SUMMARY JUDGMENT ANALYSIS

The Defendant argues that the Court should grant summary judgment in its favor because there is no direct or circumstantial evidence under the mixed motive approach to show discriminatory intent, because the EEOC and Ford cannot establish a *prima facie* case of discrimination, and because the EEOC and Ford have no evidence of pretext. The Defendant urges that Ford was not meeting its legitimate employment expectations or performing her job satisfactorily, and that the EEOC and Ford cannot identify any similarly situated individuals outside of her class who were treated more favorably. The EEOC responds that there is convincing evidence that would enable a reasonable jury to conclude that the termination of

Ford's employment was the result of pregnancy discrimination. The EEOC points to direct and circumstantial evidence of intentional discrimination and argues that material facts are in dispute preventing the entry of summary judgment. Ford adopts the EEOC's Response in its entirety and adds that Harrison's voice mail message is a smoking gun showing the Defendant's discrimination, that Ford's demotion and termination are suspicious in terms of timing, and that a reasonable juror would doubt the Defendant's alleged reason for terminating Ford's employment.

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to "discharge any individual" or "otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act (PDA) amended Title VII to define discrimination "because of sex" or "on the basis of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The statute further states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.* The PDA "brought discrimination based on pregnancy within a woman's protections against sex discrimination." *Hunt-Golliday v. Metro. Water Reclamation Dist.,* 104 F.3d 1004, 1010 (7th Cir. 1997).

Pregnancy discrimination claims are analyzed like any other sex discrimination claim. *Hall v. Nalco Co.*, 534 F.3d 644, 647 (7th Cir. 2008). A plaintiff may prove a pregnancy discrimination claim through either the direct method or the indirect method. *Griffin v. Sisters of Saint Francis, Inc.,* 489 F.3d 838, 844 (7th Cir. 2007) (per curiam); *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). With the direct method, a plaintiff may prove

discrimination by showing an admission of discriminatory animus or by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination. *Phelan v. Cook County,* 463 F.3d 773, 779 (7th Cir. 2006). Three types of circumstantial evidence can create this proof. *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 720 (7th Cir. 2008); *Troupe,* 20 F.3d at 736. First, a plaintiff may bring direct evidence by way of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Petts*, 534 F.3d at 721; *Troupe,* 20 F.3d at 736. Second, a plaintiff may have evidence (whether or not rigorously statistical) demonstrating that similarly situated employees outside the plaintiff's protected class received systematically better treatment. *Petts*, 534 F.3d at 721; *Troupe,* 20 F.3d at 736. Third, a plaintiff might show that she was qualified for the job but was passed over for or replaced by a similarly situated person not in the protected class, and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Petts*, 534 F.3d at 721; *Troupe,* 20 F.3d at 736. Regardless of the category of circumstantial evidence brought forward by a plaintiff, the evidence brought forward must point directly to a discriminatory reason for the employer's action. *Petts*, 534 F.3d at 720.

With the indirect method, a plaintiff must come forward with evidence (1) that she was pregnant and the employer knew she was pregnant; (2) that she was performing her duties satisfactorily; (3) that she suffered an adverse employment action (such as employment termination); and (4) that similarly situated employees not in the protected class were treated more favorably. *Griffin,* 489 F.3d at 844; *Venturelli v. ARC Cmty. Servs., Inc.,* 350 F.3d 592, 602 (7th Cir. 2003); *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1005 (7th Cir. 2001). If a plaintiff

establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. *Griffin*, 489 F.3d at 844; *Venturelli,* 350 F.3d at 602. Then, if the defendant meets its burden of production, the plaintiff must present competent evidence to support an inference that the defendant's proffered nondiscriminatory explanation was pretextual for intentional discrimination. *Griffin*, 489 F.3d at 844; *Venturelli,* 350 F.3d at 602. The ultimate burden to prove intentional discrimination remains with the plaintiff. *Clay*, 253 F.3d at 1005.

The Court will analyze this case under both methods of proof. However, the Court must first note the vastly different perspectives offered by the parties. If one believes the EEOC and Ford, Ford's employment was terminated because of her recently announced pregnancy. However, if one believes the perspective offered by the Defendant, Ford was insubordinate and performed her job poorly. Both parties have come forward with evidence (a significant portion of which is contrasting affidavit testimony) to support their respective perspectives, and several disputed matters (e.g., whether Ford was performing her job satisfactorily, whether the Defendant observed "Harry's rule," and whether the Defendant's decision to demote and terminate Ford's employment stemmed from a discriminatory motive) come "down to a good old-fashioned swearing contest that can be resolved only by assessing the credibility of" witnesses. *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008). Of course, at this stage of the litigation, the Court is not to weigh the evidence or make credibility determinations, which "lie exclusively within the fact-finder's domain and are not appropriate . . . at the summary judgment stage." *Id.* The Court is, instead, to view the facts in the light most favorable to the EEOC and Ford, the non-movants, and to draw all reasonable inferences in their favor. Because the evidentiary materials submitted by the parties clearly show that genuine issues of material fact remain precluding summary

judgment, the Court will not take the time to address the whole array of evidentiary materials submitted by the parties.

As to the direct method of proof, the EEOC and Ford urge that the voice mail message left by Harrison, one of the Defendant's managers and one of Court's daughters, is clear, direct evidence of discriminatory animus. The evidence they have put forward shows that, on September 21, 2006, the same day Ford told Van Tornhout, Harrison, and Hess that she was pregnant (and discussed her pregnancy with Court) and nine days before Ford's employment was terminated, Hess expressed concern to Ford about her losing her job, and Harrison left a voice mail message for Ford that stated:

> Hey, Hope, it's Mandy. Emily said that you were starting to freak out. I'm calling to reassure you that you—we're not pulling you yet. We'll give you at least the three months and then we'll have to reevaluate. We're not cutting you. We'll try to work you in, but no promises because that's—we don't [know] how we would rework it honestly. You know, I'm not promising that you're going to be cut, but I'm not, also not promising that we'll definitely have a spot. But Harry's Rule is the first time you slip, the first time you trip, the first time any sign of that pregnancy shows through, you're done. Not you move, you're done. So keep it clean. Don't drop stuff. Don't screw up tickets. Don't, by all means don't fall because that's, his rule is, then you're done, anybody that's pregnant so let that be known. We're not getting rid of you. We'll leave you up there at least through the third, usually through the third month and then it's time to go. If you're going to be tired, I'm telling you kid, so maybe we'll even be able to move you around a little bit but I don't know how much. We just don't have a whole lot of spot right now. But we will, we'll work with you. Don't worry about that. See what you find out tomorrow and then we'll talk to you tomorrow. Sleep tight. Bye, bye.

(Harrison Dep. 46–47.) As the floor manager for the Defendant, Harrison participated in hiring and firing decisions and communicated policies and rules to staff. (Harrison Dep. 28.) The EEOC and Ford have also come forward with evidence that, on September 23, Court told Ford that the Defendant would "[p]robably move [her] downstairs as long as she was able to work but with past experience with girls they usually could not keep pace" and that "any slip [the Defendant] had to

send her home." (Court Dep. 144.) Court's statement is not inconsistent with "Harry's rule,"
which Harrison mentioned in the September 21 voice mail message. In addition to Harrison's
voice mail message and Court's comment, the EEOC and Ford have pointed to an array of
additional circumstantial evidence, including the personal meeting of DeShone (aka "Harry")
with Ford during which he discussed her pregnancy, but not any poor job performance by her,
and told her to be careful not to slip and fall; the Defendant's decision to move Ford to work
downstairs where she would make less money; the suspicious timing of the Defendant's decision
to move her downstairs on September 29 and then terminate her employment on September 30;
Ford's satisfactory performance of her job; and the lack of counseling regarding her allegedly
poor job performance. This evidence is more than adequate to provide a basis for an inference of
intentional discrimination based upon Ford's pregnancy and sex. As a consequence, the
Defendant's Motion for Summary Judgment will be denied.

      As to the indirect method, there is no dispute among the parties that Ford was pregnant,
that the Defendant knew she was pregnant, that Ford was moved downstairs to work, and that
Ford's employment was terminated. The EEOC and Ford have come forward with evidence
having the tendency to show that she was performing her job satisfactorily and that other
employees were assigned her tables. The Defendant has articulated two legitimate,
nondiscriminatory reasons for its decision to end Ford's employment—insubordination and poor
work performance. The EEOC and Ford have pointed to several pieces of evidence that suggest
an inference that the Defendant's proffered explanations are unworthy of belief, a mere pretext
used to cover its tracks. These include Harrison's voice mail message, Harry's rule, Court's

September 23 comment, and the suspicious timing of Ford's demotion and termination.[4] Thus, the EEOC and Ford have met their burden of coming forward with evidence to establish a *prima facie* case of pregnancy discrimination and to suggest that the Defendant's proffered explanation is a pretext for intentional discrimination. As a consequence, the Defendant's Motion for Summary Judgment will be denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion to Strike Affidavit [DE 41] and the Defendant's Motion for Summary Judgment [DE 30].

SO ORDERED on June 12, 2009.

/s Theresa L. Springmann
THERESA L. SPRINGMANN, JUDGE
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

---

[4] Given the evidence put forward by the EEOC and Ford regarding her satisfactory job performance and the content and outcome of an application of Harry's rule, the evidence brought forward by the Defendant regarding Ford's allegedly poor job performance highlights the disputed nature of these facts, especially with regard to the Defendant's proffered reasons and pretext.